**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**United States of America,**

                **Plaintiff,**                      **REPORT AND**
                                                    **RECOMMENDATION**
      **v.**                                            **10-CR-6128**

**Richard Anderson,**

                **Defendant.**

---

### Procedural Background

By Order of Judge Charles J. Siragusa, dated June 22, 2010, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Docket # 2). On May 25, 2011, defendant Richard Anderson filed omnibus motions. (Docket # 139). The motions sought various forms of relief. The Government has filed papers in opposition to defendant's motions (Dockets ## 185, 186) and the defendant filed reply papers in further support of his motions (Docket # 192). On October 3, 2011, a hearing was held and oral arguments were heard from the parties as to the original motions.

On December 1, 2011, the defendant filed a motion to suppress testimony relating to historical cell phone information regarding defendant's locations from March 4 to March 13, 2010. (Docket # 206). On December 30, 2011, defendant filed a supplemental motion to his December 1st motion to suppress testimony relating to historical cell phone information. (Docket # 209). On January 13,

2012, the Government filed opposition papers to defendant's December 1 and December 30th motions (Docket # 212) and defendant filed a reply in further support of his motions (Docket # 216). On January 20, 2012, a supplemental hearing was held. Post hearing letter "briefs" were submitted by the Government on January 23, 2012 (Docket # 218) and by defense counsel on January 26, 2012 (Docket # 219).

The instant Report and Recommendation will address Anderson's motions to suppress (1) statements Anderson allegedly made to members of the Town of Greece New York Police Department and (2) physical evidence seized from 2987 Upton Road in Columbus Ohio. A supplemental Report and Recommendation will soon be issued for the remaining suppression motions filed by Anderson.[1]

## Discussion

### A. Motion to Suppress Statements made March 19, 2010.

The testimony adduced at the November 21, 2011 suppression hearing revealed that in early March 2010, Sergeant Mark Concordia of the Town of Greece Police Department was involved in the investigation of a triple homicide in the Town of Greece. See

---

[1] The supplemental Report and Recommendation will address Anderson's motions to suppress (1) statements Anderson allegedly made to Latayna Boyd, (2) evidence seized pursuant to an eavesdropping warrant, (3) telephone records from the Maricopa County and Monroe County jails, and (4) testimony regarding historical cell phone information regarding Anderson's locations from March 4 through March 13, 2010.

2

Transcript of November 21, 2011 Hearing (hereinafter "11/21/11 Tr.") (Docket # 210) at p. 5. Sergeant Concordia testified that on March 18, 2010 he was advised that three suspects in the triple homicide had been arrested in Arizona and were being held on State marijuana and weapons charges. Id. at p. 6. Sergeant Concordia, along with Sergeant Henderson and U.S. Deputy Marshal Shane Marshall, traveled to Arizona on March 18th to interview the three suspects, and arrived in Arizona at approximately 11:00 p.m. Id. After visiting the site of the arrest, the officers were transported to the Maricopa County Jail where the suspects were being held. Id. at p. 8. Once at the jail, the officers were accommodated in a small interview room, and the local deputies escorted the defendant, Mr. Anderson,[2] into the room. Id. When the defendant entered the interview room "[h]e was noticeably limping," "appeared to be in discomfort when he was walking" and told the officers "that he was injured during the arrest." Id. at p. 10. Concordia testified that although Anderson "appeared to be in discomfort when he was walking," he did not appear to be in discomfort when he sat down. Id.

According to Concordia, the officers introduced themselves to the defendant as "law enforcement" and "told him that we would like to speak to him." Id. at p. 9. Concordia testified that the

---

[2] Sergeant Concordia testified that at the time of the interview on March 18, 2010, he knew the defendant as "Jason Key" and not as Richard Anderson. 11/21/11 Tr. at p. 9.

defendant was given a glass of water and then he read the defendant his Miranda rights using "the standard Miranda notification warning card that's issued to us by the Town of Greece Police Department." Id. at pp. 9-10. Concordia read each Miranda warning on the card "numbered 1 through 5 verbatim." Id. at p. 12. Concordia then asked Anderson if he understood what was read to him, upon which Anderson responded, "yes." Id. Concordia then asked Anderson, "Do you want to talk to me now?" and Anderson responded, "I'll talk." Id. Concordia testified that the interview commenced at approximately 1:24 a.m. on March 19, 2010. Id. at p. 15. The officers then began to interview Anderson, which lasted "no more than 45 minutes." Id. at p. 12. The interview came to a stop because Anderson requested an attorney. Id. at p. 13. Concordia testified that once Anderson asked for an attorney, "[t]he interview stopped and the deputies came and retrieved him and brought him back to his cell." Id. Concordia testified that Anderson never asked for an attorney during the 45 minute period that they interviewed him, nor did he indicate in any way that he wanted to stop speaking with them. Id. The officers did not have any further contact with Anderson that night. Id.

Anderson claims that his March 19, 2010 statements made to Sergeants Concordia and Henderson were involuntarily made because (i) he was questioned without the benefit of being read his Miranda rights, and (ii) he was in pain from being kicked in the head by

police when he was arrested and was not afforded medical care prior to being interviewed by the Greece Police. See Affirmation of Robert G. Smith, Esq. (hereinafter "Smith Aff.") annexed to Docket # 139 at ¶¶ 17-19.

1. Custodial Interrogation. There is no dispute that Anderson was subjected to a custodial interrogation after he was arrested at the Maricopa County Jail in Arizona and questioned by Greece Police Sergeants Concordia and Henderson. It is well settled that police may not interrogate a suspect who has been taken into custody without first advising him of his Miranda rights. United States v. Newton, 369 F.3d 659, 668 (2d Cir. 2004). "[A] person subjected to custodial interrogation is entitled to the benefit of the procedural safeguards enunciated in Miranda, regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." Berkemer v. McCarty, 468 U.S. 420, 434 (1984).

Based on the evidence presented at the suppression hearing, however, I find that the Government has met its burden in proving that Anderson was advised of his Miranda rights, understood those rights and then knowingly and voluntarily agreed to waive his rights and speak to Sergeants Concordia and Henderson. Specifically, the undisputed testimony at the hearing confirmed that Miranda warnings were in fact given to Anderson on March 19, 2010. The evidence demonstrates that after introducing themselves

as "law enforcement" to Anderson at the Maricopa County Jail, Sergeants Concordia and Henderson read Anderson his Miranda rights using "the standard Miranda notification warning card that's issued to us by the Town of Greece Police Department." See 11/21/11 Tr. at pp. 9-10. The evidence in the record demonstrates that Concordia read each Miranda warning on the card "numbered 1 through 5 verbatim" to Anderson. Id. at p. 12. Anderson was asked by Concordia if he understood the rights that were read to him and Anderson responded "yes" and told the Sergeants that he was willing to waive his rights and speak to them. Id. There is no evidence of coercion, threats or trickery which would have improperly or unfairly induced Anderson to speaking with the Sergeants. Accordingly, I find that Anderson was properly advised of his Miranda rights.

2. Voluntariness. Anderson also argues that any statements he made to Sergeants Concordia and Henderson were involuntary because he was suffering from significant pain due to being kicked in the head by police at the time of his arrest. "A determination as to the voluntariness of a confession requires an inquiry into all the circumstances surrounding the law enforcement officials' conduct to ascertain whether it overcame the accused's will to resist and brought about a confession that was not freely self-determined." Campaneria v. Reid, 891 F.2d 1014, 1019-20 (2d Cir. 1989), cert. denied, 499 U.S. 949 (1991). As Magistrate Judge

Payson recently stated: "Where a defendant argues that a medical condition or injury rendered his statements or confession involuntary, relevant considerations include the degree of pain, if any, experienced by the defendant, the nature of the interrogation and whether the defendant was 'awake and alert.'" United States v. Durr, No. 09-CR-6232L, 2010 WL 3199887, at *5 (W.D.N.Y. July 22, 2010), Report and Recommendation adopted by 2010 WL 3219369 (W.D.N.Y. Aug. 11, 2010); see also Zayas v. Ercole, No. 08-CV-1037 (CBA), 2009 WL 6338395, at *8 (E.D.N.Y. Nov. 9, 2009)("An accused's medical condition will render his statement involuntary only if his injuries are severe and the accused does not appear alert, responsive, or oriented.").

Here, although Anderson was "limping" when he entered the interview room and initially complained of being injured during his arrest, he did not again complain of pain or otherwise exhibit symptoms of pain once the interview commenced. The hearing evidence confirmed that once Anderson was seated for the interview, he no longer appeared to be in the same discomfort as when standing, never complained of being in pain, did not ask to be treated for his injury, did not request to end the interview due to his pain and was alert, responsive and oriented. See 11/21/11 Tr. at p. 14; see also United States v. Khalil, 214 F.3d 111, 121 (2d Cir. 2000)(inculpatory statements given by hospitalized defendant as he was being prepared for "life-saving surgery" were knowing and

voluntary as, despite pain, defendant "was alert, seemed to understand the agent's questions, and gave responsive answers"), cert. denied, 531 U.S. 937 (2000).

In sum, based on the proof adduced at the suppression hearing, I find that (1) Anderson was properly advised of his Miranda rights and thereafter knowingly waived his Miranda rights and (2) the statements he thereafter made to law enforcement were voluntarily made. Accordingly, it is my Report and Recommendation that Anderson's motion to suppress his post-arrest statements should be **denied**.

### B. Motion to Suppress Physical Evidence

On March 20, 2010 a search warrant was executed for 2978 Upton Road East in Columbus, Ohio.[3] Anderson asserts that the warrant was defective on its face because (i) the application for the warrant did not establish probable cause, (ii) the affidavit in support of the warrant "contains deliberately or recklessly false or misleading information," and (iii) the warrant "does not describe the items to be seized with sufficient particularity thereby rendering the Warrant unconstitutional as a 'general warrant.'" See Smith Aff. at ¶ 23.

---

[3] Anderson has established an expectation of privacy in 2978 Upton Road East sufficient to permit him standing to contest the search. See Anderson Affidavit dated September 27, 2011, annexed as Exhibit "A" to Docket # 192.

voluntary as, despite pain, defendant "was alert, seemed to understand the agent's questions, and gave responsive answers"), cert. denied, 531 U.S. 937 (2000).

In sum, based on the proof adduced at the suppression hearing, I find that (1) Anderson was properly advised of his Miranda rights and thereafter knowingly waived his Miranda rights and (2) the statements he thereafter made to law enforcement were voluntarily made. Accordingly, it is my Report and Recommendation that Anderson's motion to suppress his post-arrest statements should be **denied**.

### B. Motion to Suppress Physical Evidence

On March 20, 2010 a search warrant was executed for 2978 Upton Road East in Columbus, Ohio.[3] Anderson asserts that the warrant was defective on its face because (i) the application for the warrant did not establish probable cause, (ii) the affidavit in support of the warrant "contains deliberately or recklessly false or misleading information," and (iii) the warrant "does not describe the items to be seized with sufficient particularity thereby rendering the Warrant unconstitutional as a 'general warrant.'" See Smith Aff. at ¶ 23.

---

[3] Anderson has established an expectation of privacy in 2978 Upton Road East sufficient to permit him standing to contest the search. See Anderson Affidavit dated September 27, 2011, annexed as Exhibit "A" to Docket # 192.

1. <u>Probable Cause and Good Faith</u>: Anderson argues that the affidavit in support of the warrant and its attachments "fail to establish any connection between the premise to be searched and the probability of finding evidence of the Rochester murders therein" and, therefore, it "is not supported by probable cause, and the search and seizure based on the Search Warrant violates the Fourth Amendment." <u>Id.</u> at ¶ 29.  The government contends that the warrant application provided probable cause that 2978 Upton Road in Columbus was Anderson's residence and that given information set forth in the warrant application, it would be reasonable to infer that having stayed at the house immediately before and/or after the murder, he may have left evidence relevant to the murder at the house.

As set forth in Anderson's moving papers, the affidavit in support of the search warrant was that of Detective Michael Ives, a Sergeant with the Town of Greece New York Police Department.  In his affidavit, Detective Ives set forth the following facts as establishing probable cause: (1) On March 9, 2010, members of the Greece Police Department were dispatched to investigate a report of gunshots fired at Building 20, Apartment 22, Milford Street in Greece, New York; (2) Greece Police Officers arrived to discover a triple homicide had occurred at that address; (3) during the course of the investigation into these homicides, the Greece Police found .45 and 9mm caliber casings at the scene and learned that the

homicides "may have been related to the sale and distribution of marijuana, as marijuana and other items related to the possession, packaging, sale, and distribution of marijuana were located at the scene of the homicides"; (4) the Greece Police learned that three males had rented two separate hotel rooms at the Holiday Inn Express on West Ridge Road in Greece, New York on the day of, as well as the days proceeding, the homicides; (5) one of these men has been identified as Ashton Johnson; (6) two additional men arrived at the Columbus, Ohio airport on March 5, 2010 and departed the Columbus, Ohio airport on March 12, 2010; (7) these men have been identified as Charles E. Rainey (a.k.a. Andrew Wright) and defendant Anderson, and their airline tickets were purchased with a credit card belonging to Rainey;[4] (8) Charles Rainey lists an address of 2978 Upton Road, Columbus, Ohio; (9) on March 9, 2010, at approximately fifteen minutes after the homicides took place, Johnson, Rainey and defendant Anderson were seen entering the Comfort Inn Hotel on Buell Road in the Town of Gates, New York; (10) all three of these men, including defendant Anderson, and Latayna Boyd "have previous criminal histories for drug related charges"; (11) Johnson and Rainey "were known to have confirmed

---

[4] It was later determined – after the search warrant was executed – that the credit card did not belong to Rainey, but rather belonged to Tanika Early. The Government agrees that this was "an error" in the affidavit but submits that it was not a "material" error and was not done deliberately. See Transcript of October 3, 2011 Hearing (Docket # 199) at pp. 17-22.

fugitive arrest warrants"; (12) all three of these men, including defendant Anderson, "have immigration issues relating to either their known or assumed names or aliases"; (13) on March 18, 2010, members of the United States Marshal Task Force effected the arrests of Johnson and Rainey at Rainey's residence in Arizona; (14) defendant Anderson was at Rainey's residence at the time the arrests were made; (15) law enforcement located at the residence "approximately 243 pounds of marijuana and two .45 caliber handguns"; (16) law enforcement's investigation has determined that 2978 Upton Road is the current residence of defendant Anderson and Latayna Boyd. See Exhibit "C" attached to Docket # 139. Based on these facts as well as his "training, experience and knowledge of this investigation" Officer Ives stated in his affidavit that "there is reasonable cause to believe that Boyd and Anderson live at 2978 Upton Road and that there is evidence of the crime of Murder in the Second Degree ... located within said premises." See id.

Search warrants must be based upon a showing of probable cause. Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in the place to be searched. Ornelas v. United States, 517 U.S. 690, 696 (1996). When it comes to the search of a residence, two factual showings are necessary: "first, that a crime

was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983). See Illinois v. Gates, 462 U.S. 213, 230 (1983)(Court must ask "whether there is 'probable cause' to believe that contraband or evidence is located in a particular place"). "Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity." United States v. Rowland, 145 F.3d 1194, 1203-04 (10th Cir. 1998). See United States v. Kortright, No. 10 CR 937(KMW), 2011 WL 4406352, at *7 (S.D.N.Y. Sept. 13, 2011)(probable cause lacking where "the only factual link in the Affidavit between Defendant's alleged criminal activity and the Apartment is the fact that Defendant resided at the Apartment").

Here, the Government concedes that the showing of probable cause set forth in Detective Ives's affidavit is not strong. See Transcript of October 3, 2011 Hearing (Docket # 199) at p. 12.[5]

---

[5] Indeed, when reviewing the same search warrant in the context of a state murder prosecution commenced against Anderson, Acting Monroe County Court Judge Melchor E. Castro found the warrant for 2978 Upton Road East to be in violation of New York State law because the warrant application "simply fail[ed] to establish a substantial probability that [Anderson] was involved in the homicide." See Exhibit "B" annexed to Docket # 192 at p. 11. Judge Castro's decision was, of course, grounded in New York State law and, as Judge Castro made clear in his decision, the choice of law question was "vital" to his determination because New York has not adopted either the "totality of the circumstances" test found

12

For this reason, the Government emphasized at oral argument its position that even if the Ohio warrant was not supported by probable cause, exclusion of any evidence seized is not required. See Government's Memorandum in Opposition (hereinafter "Gov. Opp. Memo") (Docket # 185) at p. 16. In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court held that a determination that a search warrant lacked probable cause does automatically require the suppression of all evidence seized pursuant to the defective warrant. Instead, the Court established an exception to the exclusionary rule for "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." 468 U.S. at 922. According to Leon, in those circumstances, "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Id. at 921. The Supreme Court recently expanded upon it's holding in Leon in Herring v. United States, 555 U.S. 135 (2009). In Herring, the Court emphasized that in light of the costs inherent in applying the exclusionary rule – "letting guilty and possible dangerous defendants go free" – exclusion of evidence "has always been our last resort, not our first impulse." Herring,

---

in Illinois v. Gates, 462 U.S. 213 (1983) or the "good faith" exception to the exclusionary rule as set forth in United States v. Leon, 468 U.S. 897 (1984). See Exhibit "B" annexed to Docket # 192 at pp. 6-7.

555 U.S. at 140-41 (citation omitted). Accordingly, the Court held:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

Id. at 144.

Here, assuming that the warrant was improperly issued on facts amounting to less than probable cause, I find that the Government has met its burden of proving that the exclusionary rule is not "a proper remedy for the violation" of the Fourth Amendment. United States v. Julius, 610 F.3d 60, 66, 68 (2d Cir. 2010)(remanding trial court's grant of suppression of firearm for "consideration by district courts of whether the goal of deterring violations of the Fourth Amendment outweighs the costs to truth-seeking and law enforcement objectives"). The supporting affidavit at issue here was certainly not by any means boilerplate or "bare bones," but rather set forth numerous case specific facts upon which law enforcement believed a nexus had been established between the murders and the target residence. Evidence of drug trafficking and .45 caliber casings were found at the murder scene, and three suspects, including Anderson, had rented two hotel rooms a short

distance from the murder scene the day before the murders. The three men, including Anderson, had traveled to Rochester under false names and all had criminal histories involving drug related offenses, left Monroe County after meeting at a different hotel shortly after the murders and days later were found in Phoenix Arizona in a residence where 243 pounds of marijuana was found along with two .45 caliber weapons. Anderson's residence was established as 2978 Upton Road in Columbus and Anderson had traveled through Columbus on his way to Rochester and after leaving Rochester after the murders were discovered. In addition, baggage fees for the luggage of one of the men Anderson was traveling with was paid for with a credit card in a false name (Charles Rainey) with a billing address of 2978 Upton Road in Columbus Ohio and a search of public databases revealed that the Upton Road address was the "current residence" of Anderson.

During oral argument, the Government acknowledged that had the same facts been presented to this Court it would be a reasonable judicial response to say "there's not enough here" to connect the 2978 Upton Road residence to the murders being investigated. That I might agree with the Government is not the litmus test in my analysis. For I also conclude that in the present case there is no evidence that the issuing judge abandoned his independent role as a neutral and detached finder of probable cause or that the judge

issued the warrant in reliance on a deliberately or recklessly false affidavit. Nor do I find that the warrant was based on an affidavit so lacking in facts amounting to "probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. at 923.[6] It would be easy for this Court to second guess whether these facts amounted to only "mere suspicion" that evidence of the Rochester murders would be present in Anderson's residence in Columbus or whether these facts rose to the level of probable cause. But the bottom line is that such an inquiry is not necessary. The court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal in light of 'all of the circumstances.'" Herring v. United States, 555 U.S. 135, 129 (quoting United States v. Leon, 468 U.S. at 922 n.23)(internal quotation mark omitted). Based on the totality of the record before me, I conclude that neither the affiant or the officers executing the search would have any

---

[6] Anderson argues that the search warrant was "facially deficient" because after listing the items to be seized it contained the "catch all" phrase "including any items deemed to be of evidentiary value in the investigation of the crimes of murder and crimes yet unknown." I agree with the Government that because the challenged phrase is preceded in the same sentence by a list of particular items and categories of evidence to be seized, the inclusion of the "catch all" phrase does not render the warrant an unconstitutional "general warrant." Andresen v. Maryland, 427 U.S. 463 (1976).

16

objective reason to question the issuing judge's determination that probable cause existed.  Accordingly, I find that the "good faith" exception applies to this case.

Franks Hearing: Finally, Anderson argues that Ives's affidavit that was submitted in support of the search warrant contains an intentional and material misstatement in that Ives asserts that the credit card used to purchase the airline tickets was "issued to Jason Key" when in fact it was issued to Tanika Early.  Anderson argues that the false statement was material to a finding of probable cause because it provides an "objective connection between Mr. Anderson and the Upton Road residence." See Smith Aff. at ¶ 38.

"[A] search or seizure pursuant to a warrant is presumed valid, and a party seeking to challenge the truthfulness of factual statements made in the affidavit ... must show that there were intentional and material misrepresentations or omissions in [the] warrant affidavit."  Abreu v. Romero, No. 10-4827-pr, 2012 WL 718078, at *1 (2d Cir. Mar. 7, 2012)(internal quotation mark and citations omitted).  "If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a Franks hearing." United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998), cert. denied 525 U.S. 1112 (1999).

17

Here, the alleged misstatement could not have been material to the issuing judge's finding of probable cause.  The Ives affidavit contained other independent evidence of the connection between Anderson and 2978 Upton Road East, including the fact that "public database searches, social networking searches and other related searches and analysis" revealed the Upton Road East dwelling to be Anderson's current residence.  See Affidavit of Michael Ives annexed as Exhibit "C" to Docket # 139 at p. 2.

## Conclusion

It is my Report and Recommendation that the defendant's motion to suppress (1) custodial post-arrest statements made on March 19, 2010 and (2) evidence seized from 2978 Upton Road East in Columbus Ohio be **denied.**

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated:    April 19, 2012
          Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).[7]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:     April 19, 2012
           Rochester, New York

---

[7] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).