# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

United States of America,

                        Plaintiff,                      REPORT AND
                                                      RECOMMENDATION
        v.                                  10-CR-6128

Richard Anderson,

                        Defendant.

## Procedural Background

By Order of Judge Charles J. Siragusa, dated June 22, 2010, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). (Docket # 2).  On April 19, 2012, I issued a Report and Recommendation as to defendant's motions to suppress (i) statements he made to Greece Police and (ii) physical evidence seized from 2987 Upton Road, Columbus, Ohio.  See Docket # 234.  The following is my Report and Recommendation as to the defendant's remaining suppression motions (Dockets ## 139, 206, 209).  Familiarity with the criminal charges and the relevant facts is assumed herein.  Facts particular to each of the remaining motions will be discussed below as relevant to the particular motion or request for relief.

## Discussion

I. Defendant's Motion to Suppress Statements to Latayna Boyd:
On March 20, 2010, officers of the Town of Greece Police Department executed a search warrant at 2978 Upton Road East in Columbus,

Ohio.  See Exhibit "A" attached to Docket # 139.  Defendant Richard Anderson and his then-girlfriend Latayna Boyd lived at the 2978 Upton Road residence at the time the search warrant was executed. On March 20, March 26 and May 19, 2010, Latayna Boyd was questioned by Greece Police and the FBI at the Franklin County Ohio Sheriff's Office.  See Exhibits "H", "I" and "J" attached to Docket # 139. On May 18, 2010 (just prior to their May 19, 2010 interview with Boyd), law enforcement obtained an eavesdropping warrant signed by Monroe County Court Judge Frank Geraci (see Exhibit "M" attached to Docket # 139), with which they planned to "bug" the contact visiting area in the Monroe County Jail where defendant Richard Anderson was being held at that time.  During their interview with Latayna Boyd on May 19, 2010, law enforcement learned the date and time that she would be visiting Anderson at the Monroe County Jail and urged her to confront him about the alleged conspiracies that he was being accused of participating in.  See Exhibit "J" attached to Docket # 139 at pp. 10-12.  On May 25 and June 8, 2010, Latayna Boyd visited defendant Anderson at the Monroe County Jail. Pursuant to the eavesdropping warrant, law enforcement recorded the conversations between them on both dates.   In his motion to suppress the conversations he had with Boyd, the defendant claims that the police violated his Fifth and Sixth Amendment rights. Anderson asserts that law enforcement's statements to Latayna Boyd during their March 20, March 26 and May 19 interviews with her

"were calculated to cause Ms. Boyd to confront Mr. Anderson about his activities in Rochester on March 9, 2010." See Affirmation of Robert G. Smith, Esq. (hereinafter "Smith Aff.") annexed to Docket # 139 at ¶ 69. Defendant argues that suppression is warranted of "any statement Richard Anderson made to Latayna Boyd because the police made Latayna Boyd a government agent, requested that she question Mr. Anderson on the facts of the case, thus tricking Mr. Anderson to make statements in violation of his Fifth and Sixth Amendment rights." Id. at ¶ 72.

A.  Fifth Amendment Claim: Anderson argues that the conduct of the police "violated Mr. Anderson's rights under the Fifth Amendment by eliciting inculpatory statements by Mr. Anderson through the use of Latayna Boyd as a government agent." See id. at ¶ 63. While the question of whether Boyd was a "government agent" during her meetings with the defendant at the Monroe County Jail is a closer call than the government acknowledges, Anderson's Fifth Amendment rights were not violated. First, even assuming that Boyd was acting as an "undercover government agent" at the time she visited Anderson, the Supreme Court's decision in Illinois v. Perkins, 496 U.S. 292 (1990) forecloses any argument Anderson has that he was subjected to custodial interrogation. In Perkins, the police sought to elicit inculpatory statements from an incarcerated defendant regarding a murder and placed an undercover agent in the defendant's cell. After the undercover agent elicited

3

incriminating statements, the defendant argued that his Fifth
Amendment rights were violated because he was subjected to
custodial interrogation by a law enforcement agent without the
benefit of <u>Miranda</u> warnings.  The Supreme Court rejected the
alleged Fifth Amendment violation finding the concerns underlying
the <u>Miranda</u> rule inapplicable, notwithstanding that the defendant
was incarcerated.  "Conversations between suspects and undercover
agents do not implicate the concerns underlying <u>Miranda</u>. The
essential ingredients of a 'police-dominated atmosphere' and
compulsion are not present when an incarcerated person speaks
freely to someone whom he believes to be a fellow inmate." <u>Id.</u> at
296.  "Deception which takes advantage of a suspect's misplaced
trust in a friend or fellow inmate does not implicate the right
against self-incrimination nor the Fifth Amendment right to
counsel.  A suspect in those circumstances speaks 'at his own
peril.'" <u>United States v. Cook</u>, 599 F.3d 1208, 1214 (10th Cir.
2010)(citations omitted). Here, any "misplaced trust" Anderson had
in Boyd during their jailhouse visits does not equate to a Fifth
Amendment violation.

To the extent Anderson is claiming that any statement he made
to Boyd was "coerced" in violation of his Fifth Amendment rights,
there simply is no support in the record to substantiate such a
claim.  That law enforcement urged Boyd to meet with and solicit
incriminating statements from Anderson is not coercion under the

4

Fifth Amendment.   Moreover, there is no evidence that Boyd, ostensibly acting as an agent of law enforcement, was threatening or coercive in her discussions with Anderson while he was incarcerated.   It is settled that a "coercive atmosphere" is lacking when an inmate speaks to someone he considers a friend or loved one.   See United States v. Birbal, 113 F.3d 342, 346 (2d Cir. 1997)("coercive atmosphere is lacking when an inmate speaks to someone he considers to be a fellow inmate").

Sixth Amendment Claim: As in his Fifth Amendment claim, Anderson argues that Boyd was a government agent and therefore his Sixth Amendment rights were violated because the government knew that he was represented by counsel and intentionally interrogated him through Boyd without presence of counsel.   Again, assuming Boyd was a government agent, Anderson's Sixth Amendment claim fares no better than his Fifth Amendment claim.   "After charges have been filed, the Sixth Amendment prevents the government from interfering with the accused's right to counsel" and "the government may not use an undercover agent to circumvent the Sixth Amendment right to counsel once a suspect has been charged with the crime." Illinois v. Perkins, 496 U.S. at 299.   In Massiah v. United States, the Supreme Court held that it is a Sixth Amendment right to counsel violation for a private individual acting as a government agent to deliberately elicit incriminating statements from the accused.   377 U.S. 201, 206-07 (1964).

5

Anderson's Sixth Amendment claim fails because the Sixth Amendment right to counsel is "offense specific." Thus, "a defendant's statements regarding offenses for which he had not been charged were admissible notwithstanding the attachment of his Sixth Amendment right to counsel on other charged offenses." Texas v. Cobb, 532 U.S. 162, 168 (2001). Here, at the time of his conversations with Boyd on March 20 and June 8, 2010, Anderson had been charged and was represented by counsel with illegal reentry after deportation in violation of 8 U.S.C. § 1326. Anderson, however, had not yet been charged with the triple homicide, drug trafficking or firearms crimes which are the charges in the current prosecution. Accordingly, assuming *arguendo* that Boyd was a government agent, Anderson could have been interviewed by Boyd about the murders, drug trafficking and firearm offenses set forth in the current indictment even in the absence of counsel. For the foregoing reasons, it is my Report and Recommendation that defendant's motion to suppress statements he made to Latayna Boyd should be **denied.**

II. Suppression of Telephone Conversations Recorded in Jail: Anderson moves to suppress recordings of telephone conversations he made while incarcerated at the Maricopa County Jail in Arizona and the Monroe County Jail in New York. As to the conversations recorded in both jails, Anderson makes three arguments in support of suppression. First, he argues that recording his jail phone

calls violated his Fourth Amendment right to be free from unreasonable searches and seizures.  Second, he argues that the recordings were obtained in violation of Title III, the federal wiretap law.  See 18 U.S.C. §§ 2510-22.  And third, Anderson argues that the statements were obtained in violation of his Sixth Amendment right to counsel.  See Smith Aff. at ¶ 73.  Because my findings in Part I of this Report and Recommendation as to lack of a triggering event necessary for a Sixth Amendment violation apply with equal force to the recorded phone calls from both the Arizona and New York jails, I will not address Anderson's Sixth Amendment arguments further.

As to Anderson's Fourth Amendment claim, Second Circuit precedent has long held that prison inmates do not have a reasonable expectation of privacy in their phone calls.  "If security concerns can justify strip and body-cavity searches, and wholly random cell searches, then surely it is reasonable to monitor prisoners' telephone conversations, particularly where they are told that the conversations are being monitored."  United States v. Amen, 831 F.2d 373, 379-80 (2d Cir. 1987)(citations omitted).  See United States v. Kee, No. S1 98 CR 778(DLC), 2000 WL 760098, at *1 (S.D.N.Y. Jun. 12, 2000)("Monitoring a prisoner's telephone call, particularly where a prisoner has consented to the surveillance, is reasonable, and not a Fourth Amendment violation.").

As to the alleged Title III violation, Anderson's legal arguments are without merit.  While it is clear that an inmate like Anderson is entitled to the protections afforded by Title III to be free from unauthorized interception of his telephone calls, see United States v. Amen, 831 F.2d at 378, no violation of Title III occurs where the inmate has consented to the interception.  United States v. Workman, 80 F.3d 688, 692 (2d Cir. 1992).  Here, the Government has proffered, and the defendant does not dispute, that both jails at issue here gave a recorded verbal warning to the inmate at the beginning of the call that the telephone conversation may be recorded or monitored by jail officials.  See Government's Memorandum in Opposition (hereinafter "Gov. Opp. Memo") (Docket # 185) at pp. 32-33.  In addition, on each inmate phone at the Monroe County Jail there is a placard which states in bold capital letters: "ALL CALLS ARE SUBJECT TO MONITORING AND RECORDING."  Id. at p. 32.  Such notifications, when part of an established jail policy of which the inmate is aware, is sufficient to support a finding that the inmate impliedly consented to having his calls recorded.  United States v. Workman, 80 F.3d at 693; United States v. Willoughby, 860 F.2d 15, 19-20 (2d Cir. 1988).  I find that Anderson received notice that his telephone calls at the Maricopa County and Monroe County Jails would be recorded and monitored, he chose to make telephone calls despite these warnings, and, as a result, he impliedly consented to the recording and monitoring of

his conversations. For these reasons, Anderson's motion to suppress recorded calls he made from the Monroe County Jail and the Maricopa County Jail should be **denied.**[1]

III: Judge Geraci's Eavesdropping Warrant: On May 18, 2010, Monroe County Judge Frank P. Geraci, Jr. signed a New York State eavesdropping warrant allowing law enforcement to monitor oral communications during any prisoner visitation between Anderson and Latanya Boyd which relate to the murders of Chris Green, Robbie Moncriffe and Mark Wisdom committed in violation of the New York State Penal Law offenses of Murder in the First Degree and Murder in the Second Degree.   The eavesdropping warrants were based upon the affidavit of Monroe County District Attorney Michael C. Green which incorporated the affidavit of Greece Police Sergeant Mark J. Concordia.   Anderson moves to suppress the fruits of the state wiretap on several grounds.

1.   Authority to Permit Eavesdropping Relating to Federal Crimes: Anderson argues that "Judge Geraci issued the eavesdropping warrant solely to discovery evidence of state crimes" – namely (i) Murder in the First Degree in violation of New York Penal Law §§ 20.00, 125.27(i)(a)(viii) and (b), (ii) Murder in the Second Degree in violation of New York Penal Law §§ 20.00, 125.25(1), and (iii)

_____

[1]  This finding forecloses Anderson's argument that the Monroe County Jail calls are the "fruit of the poisonous tree," the poisonous tree being the alleged Fourth and Sixth Amendment violations stemming from Anderson's phone calls from the Maricopa County Jail.

conspiracy to commit crimes relating to the murders of three persons identified as Chris Green, Robbie Moncriffe and Mark Wisdom which occurred on March 9, 2010 in Greece, New York – and "did not authorize an investigation of a federal crime as required in 18 U.S.C. § 2516" and "there is no authorization pursuant to § 2715(5) for disclosure and use of the intercepted wire, oral or electronic communications before a federal grant jury." See Smith Aff. at ¶ 102; see also Exhibit "M" attached to Docket # 139.   Defendant asserts that the intercepted conversations must therefore "be suppressed from use in a federal prosecution." See Smith Aff. at ¶ 103.   The Government responds by asserting that the state law crimes for which the state wiretap authorization was sought are the same as the federal criminal offenses (i.e., the murders of Chris Green, Robbie Moncriffe and Mark Wisdom) and, therefore, no prior judicial authorization is required before the recorded conversations can be used at trial.   Alternatively, the Government argues that if the Court determines that the state crimes and federal crimes are not the same, this Court should grant the Government's motion "for authority to use the recorded conversations in the trial of this case." See Gov. Opp. Memo at pp. 36-37 n.11.

Anderson and the Government's arguments are based on 18 U.S.C. § 2517(5), which provides:

> When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic

> communications in the manner authorized herein, intercepts wire, oral, or electronic communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter.

18 U.S.C. § 2517(5).  The Second Circuit has held that "[w]here the only difference between the offenses described in the wiretap authorization and those for which defendants are indicted is that the former are state offenses and the latter are federal offenses," the offenses "are not 'other offenses' within the meaning of § 2517(5)" and, accordingly, "judicial authorization is unnecessary." United States v. Young, 822 F.2d 1234, 1238 (2d Cir. 1987)(citing 18 U.S.C. § 2517(5)).  However, the government must obtain "judicial approval before wiretap evidence can be used in a criminal or grand jury proceeding relating to offenses other than those specified in the initial wiretap order."  Offenses are substantially similar when they are "described in the same language" and contain the "same essential elements."  Young, 822 F.2d at 1238.

Here, it is not necessary for the Court to engage in what could be a complicated analysis of whether a state murder charge and a federal charge of knowingly possessing and discharging a firearm in furtherance of a drug trafficking crime causing death

through the use of such firearm and acting with "malice aforethought" meet the "same offense" test. Instead, the simplest way to resolve Anderson's suppression motion would be to adopt the Government's alternative argument and require the Government to formally move to use the fruits of the state wiretap in the federal prosecution pursuant to 18 U.S.C. § 2517(5)(3). The motion should be accompanied by an affidavit confirming the representation made to this Court[2] – that any conversations captured by the state wiretap order were not been played to or derivative evidence presented to the federal grand jury. Unless directed otherwise by Judge Siragusa, such motion should be made to the trial judge.

2. <u>Substantive Challenges to the State Wiretap</u>: Anderson makes several other challenges to the wiretap authorized by Judge Geraci. These challenges were addressed at the hearing (<u>see</u> Transcript of October 3, 2011 hearing [Docket # 199]) and merit little discussion here. Anderson's claim that law enforcement failed to comply with the minimization requirements of 18 U.S.C. § 2518(5) is unsupported in the record. <u>See</u> Transcript of October 3, 2011 hearing (Docket # 199) at pp. 37-38. Anderson next argues that the application in support of the warrant failed to contain an adequate explanation as to why "traditional investigative techniques" would not suffice, as well as "the difficulties inherent in the use of normal law enforcement methods." <u>See</u> Smith

---

[2] <u>See</u> Gov. Opp. Memo at p. 37 n.11.

Aff. at ¶¶ 105-106 (citations omitted).  Based on my review of the wiretap application, I can not agree that the application was simply "boilerplate," as Anderson claims.  In his affidavit, Sergeant Concordia describes the history of the murder investigation, the evidence gathered to date, the efforts made to gather additional evidence, including executing search warrants in California, New York and Arizona and the canvassing of witnesses in the apartment complex where the murders took place.  The application set forth several of the consensually monitored jail calls between Anderson and Latayna Boyd and the expected face to face meeting between Boyd and Anderson in which they reasonably expected candid and useful information to be divulged.  The facts of the case (a violent triple murder associated with narcotics trafficking) and the speed in which the suspects left New York made Concordia's opinion that normal investigative techniques were more dangerous and appeared unlikely to succeed eminently reasonable. Anderson's sealing argument is without merit as both recordings were sealed within two days.  United States v. Massino, 784 F.2d 153, 158 (2d Cir. 1986)("Tapes should generally be sealed within two days of the expiration of the wiretap order.").  See United States v. Knight, No. 08-CR-69S-11, 2009 WL 5216959, at *2 (W.D.N.Y. Dec. 30, 2009)("The government meets the requirements of the federal and [New York] state statutes if the recordings are sealed within one or two days of the conclusion of the electronic

surveillance.").

Finally, Anderson argues that there was insufficient probable cause to support the eavesdropping warrant, as "[t]he application fails to establish any connection between the conversation to be intercepted and the murders in Rochester." See Smith Aff. at ¶ 122. "An order authorizing electronic surveillance may be issued upon showing that communications pertaining to a designated offense will be obtained, and that there is probable cause to believe an offense has been, or is about to be committed." United States v. Gallo, 863 F.2d 185, 191 (2d Cir. 1988). It is well settled that an issuing judge's "determination of probable cause should be paid great deference by reviewing courts." Id. (quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).

I find that the affidavit of Sergeant Concordia submitted in support of the eavesdropping warrant application, when reviewed in a "commonsense fashion," and giving appropriate deference to Judge Geraci, supports Judge Geraci's determination of probable cause. Viewing the affidavit as a whole, and particularly the recorded telephone conversations set forth in the affidavit, there was a factual basis to find that Anderson would meet with his girlfriend Latayna Boyd at the Monroe County Jail and that during that meeting they would discuss (1) the then ongoing murder investigation of Anderson, and/or (2) the murders and/or concealment of evidence of such murders, and/or (3) a plan or intention to hamper the police

14

investigation of the murders.

For all of the foregoing reasons, it is my Report and Recommendation that defendant Anderson's motion to suppress evidence seized pursuant to the eavesdropping warrants be **denied.**

IV. Motion to Suppress Testimony Regarding Historical Cell Phone Data: On April 8, 2010, Monroe County Court Judge John L DeMarco signed a "Search Warrant/Court Order" directing T-Mobile to provide records regarding three cell phones, including number 614-805-6136. The records sought included "cell site activations with corresponding addresses" from February 1, 2010 to March 20, 2010. (Hereinafter referred to as historical cell site information or ("CSI")) See Exhibit G (Docket #209). Defense counsel argues that the CSI obtained with respect to cell phone number 614-805-6136 "allowed the government to derive a time line of Richard Anderson's locations between March 4, 2010 and March 13, 2010" and his arrest on March 18, 2010 "was effected in large part by the government's use of historical cell phone site information." See Affirmation of Robert G. Smith, Esq. (hereinafter "Smith II Aff.") annexed to Docket # 206 at ¶ 5. According to Anderson, the government's use of CSI to track his location violated his Fourth Amendment right against unreasonable search and seizure and the Court should suppress any evidence of Mr. Anderson's locations derived from the

CSI "along with any evidence that was derived from" the CSI.  Id.
 The government makes a number substantive arguments in response to
Anderson's claim.   However, one of the government's arguments
provide the clearest justification for denying Anderson's Fourth
Amendment claim and therefore is discussed below.

Standing: Richard Anderson was deported from the United States
in 1999 and again in 2006 to Jamaica.  During his current presence
in the United States Anderson assumed the identity of Jason Key.
The government represents that the real Jason Key was a resident of
a nursing home in St. Petersburg Florida and Anderson not only
assumed Key's name but also his date of birth and social security
number.  The government argues that because the cell phone at issue
was subscribed to by Anderson using "the false identity of Jason
Key as part of his criminal activity of being in the United States
illegally" and engaging in drug trafficking activities.  See
Affidavit of Everardo A. Rodriguez, Esq. (hereinafter "Rodriguez
Aff.") (Docket # 212) at page 5.

In asserting standing, Anderson does not dispute his use of
the false identity.  Instead, he asserts in an affidavit that he
had a reasonable expectation of privacy in the use of his cell
phone, notwithstanding that he purchased the cell phone using the
false name of "Jason Key".  Anderson argues that because he used

the false identity for "legitimate" purposes (i.e. registering an automobile, buying clothes, receiving mail), he does have a reasonable expectation of privacy for activities and transactions he engaged in using his assumed "pseudonym."

To challenge a search under the Fourth Amendment, a defendant must first establish standing by demonstrating that he had a legitimate expectation of privacy in the area searched.  See California v. Greenwood, 486 U.S. 35, 39-40 (1988).  In determining whether a person has a legitimate expectation of privacy so as to give him standing to challenge a search and seizure as violative of the Fourth Amendment, a two-part analysis is used: "First, the person challenging the search must demonstrate a subjective desire to keep his or her effects private; and, second, the individual's subjective expectation must be one the society accepts as reasonable."  United States v. Paulino, 850 F.2d 93, 97 (2d Cir. 1988), cert. denied, 490 U.S. 1052 (1989)(citing California v. Greenwood, 486 U.S. at 39).  Assuming arguendo that Anderson meets the first prong of the standing test by having a subjective expectation and desire to keep the "Jason Key" cell phone records private[3], under the facts presented here I find that Anderson's

_____

[3] Generally, "the use of an alias or fictitious name undercuts a claim that an individual has an expectation of privacy to

claimed privacy expectations are not ones that society accepts as reasonable under the Fourth Amendment.

In <u>United States v. Jacobsen</u>, 466 U.S. 109, 122 (1984) the Supreme Court explained that the "concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere expectation, however well justified, that certain facts will not come to the attention of the authorities."  Thus, where an individual deliberately uses or assumes a false name and identity in order to further criminal conduct or avoid detention by law enforcement, courts have held that such conduct is not consistent with an expectation of privacy that society accepts as reasonable. <u>See</u> <u>e.g.</u> <u>United States v. Walker</u>, 20 F.Supp.2d 971, 974 (S.D. W. Va. 1998)(Defendant "is not entitled to Fourth Amendment protection when he has apparently employed the use of an alias in furtherance of his criminal scheme."); <u>United States v. Salameh</u>, No. 93 Cr. 0180(KTD), 1993 WL 364486, at *6-7 (S.D.N.Y. Sept. 15, 1993)("It seems contrary to reason to let a person use an alias to hide his connection with

challenge the search of an area or the seizure of an item." <u>United States v. Suarez-Blanca</u>, No. 1:07-CR-0023-MHS/AJB, 2008 WL 4200156, at *6 (N.D. Ga. Apr. 21, 2008)(noting that courts often determine that "an individual does not have a legitimate expectation of privacy in items that are not in the individual's name or when an individual uses an alias or fictitious name").

leased property and yet maintain that he has standing to challenge a search of the premises"); United States v. Gerena, 662 F.Supp. 1218, 1253 (D. Conn. 1987)("At best, the defendants' allegations establish no more than that they attempted to conceal their activities in the hope that no one would find out what they were up to. This type of claim, without more, is clearly inadequate to confer standing."). See also United States v. Lewis, 738 F.2d 916, 919-20, n. 2 (8th Cir.1984), cert. denied, 470 U.S. 1006 (1985)("A mailbox bearing a false name with a false address and used only to receive fraudulently obtained mailings does not merit an expectation of privacy that society is prepared to recognize as reasonable."). "Following this reasoning several district courts have held that a defendant lacks standing to challenge cell phone records in which the defendant was not a registered subscriber." United States v. Davis, Crim No. 10-339-HA, 2011 WL 2036463, *3 (D. Ore. May 24, 2011)(collecting cases).

Anderson argues that one does not lose their reasonable expectation of privacy simply by using a pyseudonym, citing, among others, Mark Twain (Samuel Clemons), Pauline Phillips (Ann Landers) and Marion Morrison (John Wayne). See Defendant's Reply to Government's Memorandum (Docket #216) at pages 2-3. However, there is a "fundamental difference" between someone using an alias to

subscribe to a cell phone and someone deliberately and fraudulently assuming another's identity including their name, date of birth, and social security number in order to remain illegally in the United States and avoid detection by law enforcement.  United States v. Johnson, 584 F.3d 995, 1002 (10th Cir. 2009).  In other words, Mark Twain was Samuel Clemons and Pauline Phillips was Ann Landers.  But Richard Anderson was not Jason Key, the nursing home resident who resided in St. Petersburg Florida.  Rather, Richard Anderson is a twice deported non-citizen who "stole" the identity of an actual citizen in order to conceal his true identity and avoid detection by law enforcement.  While there may be circumstances where a defendant's use of a false name does not extinguish his right to invoke the Fourth Amendment and seek suppression of evidence seized by law enforcement[4], this is not one of them.  In this Court's view, Anderson's claimed privacy expectation in transactions he conducted by using the fraudulently obtained identity of Jason Key is not one that society accepts as

---

[4]   Anderson refers the Court to United States v. Pitts, 332 F.3d 449 (7th Cir. 2003) as an example of a situation where a defendant does not forfeit his Fourth Amendment privacy rights notwithstanding the fact that he used an alias in engaging in criminal activity. However, as the court in Pitts pointed out, the defendant "had the right to use false names in sending and receiving mail" that contained contraband. Id. at 459. Here, by contrast, Anderson was illegally in the United States and had no right to fraudulently assume the identity of the real Jason Key.

reasonable under the Fourth Amendment.   Since I conclude that Anderson lacks standing to challenge the search, I need not address his remaining arguments in support of suppression of the CSI records.   Accordingly, it is my Report and Recommendation that defendant Anderson's motions to suppress the historical cell phone location information (Dockets ## 206, 209) be **denied.**


## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motions to suppress statements to Latayna Boyd be **denied,** to suppress the eavesdropping warrant be **denied,** to suppress the Maricopa County Jail records be **denied,** to suppress the Monroe County Jail records be **denied,** and to suppress historical cell phone location information be **denied.**

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge


Dated:     May 29, 2012
           Rochester, New York


21

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:     May 29, 2012
           Rochester, New York

_____

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).